UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA MORIN,

        Plaintiff,                        Hon. Ellen S. Carmody

v.                                           Case No. 1:16-CV-202

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On May 19, 2016, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on her alleged disability onset date.  (PageID.196).  She successfully completed high school and worked previously as a nurse's aid, cashier/checker, and sales attendant.  (PageID.56).  Plaintiff applied for benefits on May 10, 2013, alleging that she had been disabled since April 24, 2013, due to arthritis in her left knee, intermittent leg numbness, back problems, muscle cramping, and difficulty standing for long periods of time.  (PageID.196-208, 236).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (PageID.93-194).  On January 29, 2015, Plaintiff appeared before ALJ Mark Kim with testimony being offered by Plaintiff and a vocational expert.  (PageID.62-91). In a written decision dated March 3, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.49-58).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (PageID.34-37).  Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

4

Case 1:16-cv-00202-ESC   ECF No. 13 filed 12/29/16   PageID.457   Page 5 of 11

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) obesity; (2) sacroiliac joint disease; (3) knee pain; (4) foot pain; (5) hip pain; and (6) lumbosacral spondylosis with radiculopathy, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.52-53). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can only occasionally balance, kneel, crouch, or climb ramps/stairs; (2) she can frequently stoop; (3) she can never crawl or climb ladders, ropes, or scaffolds; (4) she should avoid all exposure to hazards such as moving machinery and unprotected heights; (5) she must be permitted to alternate between sitting and standing while remaining on task, meaning that she is allowed to stand for fifteen minutes after sitting for one hour, before returning to the seated position; and (6) she is limited to performing simple tasks. (PageID.54).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant

can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 442,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.84-89). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ's Step Three Determination is Supported by Substantial Evidence**

As noted above, as Step 3 of the aforementioned sequential process, the ALJ must determine whether a claimant's impairments meet or equals a listed impairment. In this case, the ALJ determined that Plaintiff's impairments neither met nor medically equaled any listed impairment. Plaintiff argues that she is entitled to relief because the ALJ made this medical equivalence determination without benefit of an opinion from a medical expert. Specifically, Plaintiff argues that she "should have been found to have limitations that were equivalent to the listing for 1.04 (disorders of the spine) or 1.02 (major dysfunction of a joint)." (ECF No. 11 at PageID.425).

The argument that an ALJ is *obligated* to obtain an expert medical opinion on the question of medical equivalence has been persuasively rejected by other courts in this District. *See,*

*e.g., Garza v. Commissioner of Social Security*, 2015 WL 8922011 at *6-9 (W.D. Mich., Nov. 25, 2015); *Clanton v. Commissioner of Social Security*, 2016 WL 74421 at *5-8 (W.D. Mich., Jan. 6, 2016). Moreover, as the Sixth Circuit authority cited by Plaintiff holds, ultimately the claimant bears the burden to demonstrate that her impairments meet or equal a listed impairment. *See Retka v. Commissioner of Social Security*, 1995 WL 697215 (6th Cir., Nov. 22, 1995) (recognizing that regardless whether a medical opinion on the issue of equivalence is required, "[i]t is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment").

      A.      Section 1.02

Section 1.02A[2] of the Listing applies to:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity. . .and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.      Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02.

Section 1.00(B)(2)(b) provides, in relevant part, as follows:

---

[2] Section 1.02A of the Listings addresses weight-bearing joints and the ability to ambulate effectively whereas Section 1.02B addresses upper extremity impairments and the ability to perform fine and gross movements effectively. While Plaintiff has failed to specifically articulate whether she believes she is disabled pursuant to Section 1.02A or 1.02B, her argument is limited to discussion of her lower extremities and ability to ambulate. Accordingly, the Court has interpreted Plaintiff's pleading as asserting the argument that she is disabled pursuant to Section 1.02A.

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00.

The medical record does not support a finding that Plaintiff suffers from a gross anatomical deformity or an inability to ambulate effectively. Physical examinations, performed in May 2013 and September 2013, revealed minimal findings and noted that Plaintiff "is able to ambulate without the use of assistive devices." (PageID.336, 346-49). X-rays of Plaintiff's right hip, performed January 14, 2014, revealed "mild" spurring, but were otherwise "negative." (PageID.383). In March 2014 and May 2014, Plaintiff rated her pain as 4 out of 10. (PageID.358). A May 16, 2014 MRI of Plaintiff's lumbar spine revealed only "mild" disc disease with "minimal" encroachment. (PageID.366). May 2014 x-rays of Plaintiff's left foot and ankle revealed "mild"

spurring, but were otherwise "negative." (PageID.364-65). In the latter part of 2014, Plaintiff received a series of epidural injections which were effective in reducing her symptoms. (PageID.385-411). The ALJ specifically analyzed whether Plaintiff's impairments met or equaled Section 1.02, concluding that such was not the case. (PageID.53). This determination is supported by substantial evidence.

> B. Section 1.04

Section 1.04 provides as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

Again, the medical evidence does not support the argument that Plaintiff suffers from a "compromise of a nerve root. . .or the spinal cord." The evidence further reveals that Plaintiff cannot satisfy subsections A, B, or C of this particular Listing. The ALJ specifically analyzed whether Plaintiff's impairments met or equaled Section 1.04, concluding that such was not the case. (PageID.53). This determination is supported by substantial evidence.

**II.        The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff also argues that the ALJ's RFC determination is illogical. Specifically, Plaintiff argues that the ALJ's determination that Plaintiff can perform light work is inconsistent with the conclusion that she requires a sit/stand option whereby she is able to stand for fifteen minutes after sitting for one hour.

Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Light work also often involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567. These particular articulations, however, simply represent the maximum amount of lifting/carrying and standing/walking that a job can entail and still be considered "light" work. Thus, if an ALJ determines that a claimant can perform the *full range* of light work, that is, in effect, a determination that the claimant can lift/carry up to 20 pounds, can frequently lift/carry 10 pounds, and can stand/walk six hours in an 8-hour workday. Plaintiff has failed to identify any authority, however, that prevents an ALJ from determining that a claimant can perform less than the full range of work in any given category. Such was the case here, as the ALJ found that Plaintiff is capable of performing a limited range of light work. One of the limitations

identified by the ALJ is that Plaintiff requires a sit-stand option that affords her the ability to sit for significant portions of the day. The Court discerns no inconsistency in the ALJ's determination that Plaintiff can perform a limited range of light work with the aforementioned sit-stand option. Moreover, as the evidence discussed reveals, the ALJ's RFC determination is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  December 29, 2016                         /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge